# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN L. MURPHY, | CASE NO. 1:01-cv-06532-OWW-NEW (DLB) PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| STEVEN CAMBRA, | |
| Defendant. | (Docs. 100 and 104) |

I.  Findings and Recommendations Addressing Cross-Motions for Summary Judgment

    A.  Procedural History

Plaintiff Kevin L. Murphy ("plaintiff") is a state prisoner proceeding pro in this civil rights action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 12132 (Americans with Disabilities Act or ADA), and 29 U. S. C. § 794 (Rehabilitation Act or RA). This action is proceeding on plaintiff's second amended complaint, filed February 12, 2003, against defendant Cambra ("defendant") under section 1983 for violating the Equal Protection Clause of the Fourteenth Amendment, and under the ADA and the RA. (Doc. 22.) On November 20, 2006, both parties filed motions for summary judgment. (Docs. 100-102, 104.) Defendant filed an opposition to plaintiff's motion on December 6, 2006, and plaintiff filed a reply on January 11, 2007. (Docs. 106, 109.) Plaintiff filed an opposition to defendant's motion on January 16, 2007.[1] (Docs. 110-112.)

///

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on May 14, 2003. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 25.)

B.     Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It is the moving party's burden to establish that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).

"When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting from W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Issues of Material Fact 99 F.R.D. 465, 487 (1984)). "But where the moving party has the burden - the plaintiff on a claim for relief or the defendant on an affirmative defense - his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Id. Thus, as to plaintiff's motion for summary judgment, plaintiff must demonstrate there is no triable issue as to the matters alleged in his complaint. Id. This requires plaintiff to establish beyond controversy every essential element of his retaliation claims. Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986). Plaintiff's evidence is judged by the same standard of proof applicable at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

As to defendant's motion for summary judgment, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369

1    U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is
2    the opposing party's obligation to produce a factual predicate from which the inference may be
3    drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810
4    F.2d 898, 902 (9th Cir. 1987).

5         Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show
6    that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole
7    could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
8    trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

9        C.    <u>Undisputed Facts</u>

10   1.   California prisons provide varying levels of security, and inmates are assigned to particular
11        facilities based on a standardized classification system, which is designed to determine each
12        inmate's security risk.
13   2.   Under this system, each inmate receives a numerical classification score.  A low score
14        indicates a need for less security than a high score.
15   3.   Facilities have security levels ranging from Level I to Level IV.  With each level increase,
16        the amount of security increases.
17   4.   Inmates' classification scores are initially determined and reviewed at classification-
18        committee hearings, which inmates are generally entitled to attend.  The committee members
19        are composed of prison officials, who may range from the warden to correctional counselors
20        or educational staff, depending on the particular type of classification hearing.
21   5.   At an initial classification hearing, officials consider a variety of particular factors in order
22        to determine an inmate's initial classification score.  The regulations require that the officials
23        calculate the classification score by completing a CDC Classification Score Sheet, Form 839.
24   6.   After an initial classification, a classification committee reviews each inmate's classification
25        score annually for possible adjustment, based on the inmate's behavior since the last review.
26   7.   In 1994, plaintiff was the victim of a vicious assault which required he be transported to a
27        trauma unit at Mercy Hospital in San Diego County for injuries to his left hand.
28   8.   Plaintiff's injuries included damage to his tendons, muscle, tissue, bone, and left wrist.

4

9. Plaintiff sustained some paralysis to his left hand, and for a time was unable to perform various manual tasks, care completely for his hygiene, prepare meals properly, dress himself, work various jobs, or drive standard shift automobiles.[2] Prior to the injury, plaintiff was able to perform all manual tasks, care for himself, and work various jobs without any physical limitations.

10. Plaintiff was arrested in 1995 and his incarceration in state prison began in April 1996. Plaintiff was initially classified the following month, on May 29, 1996. As part of his classification score, plaintiff received two points for not being employed by one employer for more than six months before becoming incarcerated, and two points for having no military service

11. These additional points were in accordance with state regulations that were in effect at the time of plaintiff's initial classification. Cal. Code Regs. tit. 15, §3375.3(a)(2)(D)–(E) (1996), *amended by* Cal. Code Regs. tit. 15, § 3375.3 (2002). The regulations required classification committees performing initial classifications to consider these factors as indicators of stability. Other indicators of stability included the inmate's age, marital status, and education.

12. The regulations in effect at the time contained an exception for persons who were self-employed, seasonal workers, in the military, students, or homemakers, but contained no explicit exception for disabled persons, although there was room for adjustment of scores for verifiable, documented factors such as disabilities.

13. Female prisoners did not receive two classification points for a lack of military experience, as the provision did not apply to female prisoners.

14. Defendant had no direct involvement or personal participation in plaintiff's initial classification-score calculation, and defendant was not the Acting Director at the time plaintiff was initially classified in 1996 or at the time that section 3375.3 was promulgated.

///

---

[2] The parties dispute whether the paralysis was full or partial, at what point plaintiff began to regain some movement in his hand, and during what time period plaintiff was unable to perform the listed tasks.

5

15. In 2002, the initial classification process was substantially revised by regulation. Under the revision, which remains in effect today, the employment and military-history factors that added four points to plaintiff's score are no longer considered in initial classifications.

16. The new regulations do not require the recalculation of initial classification scores for inmates who were classified before the 2002 regulations took effect.[3]

17. Four-and-a-half years after plaintiff's initial classification, plaintiff filed an administrative appeal in which he contested the four points related to his employment history and lack of military experience.

18. Plaintiff contended that the points for insufficient employment history were improper because a disability—a wrist injury—had kept him from working, and that the points for having no military experience were discriminatory because female prisoners were not given points for lack of military experience.

19. Both the Second Level Response and the Director's Level Response to the appeal stated that if plaintiff could provide proof that he was kept from working because of his disability, his score could be reduced accordingly. As the Director's Level Response explained, although plaintiff "was able to provide verification of his current medical condition, this does not verify his inability to work during the period in question."

20. Plaintiff's appeal concerning the two classification points for no military experience, however, was simply denied because the point assignment comported with the applicable regulation.

D.   Discussion

In his second amended complaint, plaintiff alleges that he was penalized by the assessment of additional classification points because he did not have employment for the six months prior to commitment to the California Department of Corrections and Rehabilitation, and he did not have prior military service. (Doc. 21.) Plaintiff alleges that he was disabled due to an injury which

---

[3] Although plaintiff purports to dispute this fact, the argument that recalculations *may* be made at any time if warranted does not bring into dispute that the new regulation do not *require* recalculation of scores for inmates classified prior to 2002.

6

occurred six to eight months prior to his incarceration and it would have been virtually impossible for him to work. (Id.) Plaintiff further alleges that female inmates were not penalized for not having prior military service. (Id.) Plaintiff alleges that the assessment of additional classification points violated his rights under the Equal Protection Clause of the Fourteenth Amendment, and the ADA and RA. (Id.)

### 1. Statute of Limitations

Plaintiff was arrested in May of 1995, and entered the custody of the California Department of Corrections and Rehabilitation in April of 1996. (Undisputed Fact 10.) On May 29, 1996, plaintiff was assessed classification points for not having the requisite employment history or prior military service. (Id.) Plaintiff subsequently filed this action on December 10, 2001. (Doc. 1.) Defendant argues that he is entitled to summary judgment because plaintiff's claims against him are barred by the statute of limitations. Plaintiff argues that his claims are not barred because equitable estoppel and equitable tolling are applicable, because the violation was an ongoing one, and because his claim did not accrue until he exhausted the administrative remedies in compliance with 42 U.S.C. § 1997e(a).

Federal law determines when a claim accrues, and "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999). Because section 1983 contains no specific statute of limitation, federal courts should apply the forum state's statute of limitations for personal injury actions. Jones v. Blanas, 393 F.3d 918, 927 (2004); Maldonado, 370 F.3d at 954; Fink, 192 F.3d at 914. Although California's statute of limitations for personal injury actions was extended from one year to two years effective January 1, 2003, the two-year statute of limitations does not apply retroactively to claims that accrued prior to January 1, 2003, and as a result, the one-year statute of limitations applies in this case. Jones, 393 F.3d at 927; Maldonado, 370 F.3d at 954-55.

The ADA and RA also do not contain specific statutes of limitation. Pickern v. Holiday Quality Food, Inc., 293 F.3d 1133, 1137 n.2 (9th Cir. 2002); Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1135-36 (9th Cir. 2001). Defendant argues and plaintiff does not dispute that

California's personal injury statute of limitations should apply. Because there is no argument before the court to the contrary, the court shall assume without deciding that California's personal injury statute of limitations applies to plaintiff's ADA and RA claims. See Pickern, 293 at 1137 n.2 (assuming without deciding that California's personal injury statute of limitations applies to ADA claims); Daviton, 241 at 1136 n.8 (noting without deciding that with rare exception, district courts apply California's personal injury statute of limitations to federal disability discrimination claims); see also Wood v. Vista Manor Nursing Ctr., No. C 06-01682 JW, 2006 WL 2850045, *6 (N.D. Cal. Oct. 5, 2006) (applying California's personal injury statute of limitations to plaintiff's ADA and RA claims).

Plaintiff's claims arise from the assessment of classification points against him for lack of requisite employment history and military service. The assessment occurred on May 29, 1996, in accordance with state regulations in effect at the time. Although plaintiff argues that his claim did not accrue until later, plaintiff's arguments are simply without merit. Plaintiff was assessed the additional classification points on May 29, 1996, plaintiff was aware of the assessment of the additional classification points at the time it occurred, and plaintiff is challenging the regulations under which he was classified at that time on the ground that the regulations violated his federal rights. There is no credible argument that his claims did not accrue at the time he was classified and assessed the additional points in 1996. Therefore, plaintiff had one year within which to file suit, subject to any applicable tolling provisions, discussed below.

        2.    Tolling

In actions where the federal court borrows the state statute of limitation, the court should also borrow all applicable provisions for tolling the limitations period found in state law. Jones, 393 F.3d at 927.

        a.    Disability of Imprisonment

Under California law, prisoners who at the time the cause of action accrued were either imprisoned on a criminal charge or serving a sentence of less than life for a criminal conviction enjoy a two-year tolling provision for damages actions. Cal. Civ. Proc. Code § 352.1 (West 2007).

///

It is undisputed that plaintiff is entitled to the application of this two-year tolling provision for his damages claim.

       b.  <u>Equitable Estoppel</u>

  Plaintiff argues that equitable estoppel is applicable because he was told by prison officials that there was nothing they could do because the regulation was the law. "[E]quitable estoppel can be used to stop a limitations period from continuing to run after it has already begun to run." <u>Socop-Gonzalez v. Immigration and Naturalization Serv.</u>, 272 F.3d 1176, 1184 (2001) (internal quotations and citation omitted). "[E]stoppel focuses on the actions of the defendant," <u>id</u>. (internal quotations and citation omitted), and "applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit," <u>Stitt v. Williams</u>, 919 F.2d 516, 522, (9th Cir. 1990). Generally, "the Government may not be estopped on the same terms as any other litigant." <u>Heckler v. Cmty. Health Servs.</u>, 467 U.S. 51, 60 (1984). To plead estoppel, plaintiff must show that: (1) that the government actors knew the facts; (2) that they intended that their conduct would be acted upon or acted in such a way that the plaintiff had a right to believe they so intended; (3) that the plaintiff was ignorant of the true facts; and (4) plaintiff detrimentally relied on the conduct of the government actors. <u>Doe v. Tenet</u>, 329 F.3d 1135, 1144-45 (9th Cir. 2003); <u>Lehman v. United States</u>, 154 F.3d 1010, 1016 (9th Cir.1998). Besides showing these normal requirements for equitable estoppel, a party seeking to estop the government must satisfy two additional requirements. <u>Pauly v. U.S. Dept. of Agri.</u>, 348 F.3d 1143, 1149 (9th Cir. 2003); <u>S & M Inv. Co. v. Tahoe Reg'l Planning Agency</u>, 911 F.2d 324, 329 (9th Cir.1990). First, the plaintiff must show that the government has engaged in "affirmative misconduct going beyond mere negligence." <u>Pauly</u>, 348 F.3d at 1149; <u>Doe</u>, 329 F.3d at 1144-45; <u>S & M Inv. Co.</u>, 911 F.2d at 329. Second, the plaintiff must show that the government's misconduct "will cause a serious injustice and the imposition of estoppel will not unduly harm the public interest." <u>Pauly</u>, 348 F.3d at 1149; <u>S & M Inv. Co.</u>, 911 F.2d at 329.

  First, defendant himself made no representation to plaintiff and plaintiff does not contend otherwise. Defendant was not involved in the initial classification of plaintiff and was not responsible for promulgating the regulation in effect at the time. (Undisputed Fact 14.)

Second, the statements made to plaintiff by various prison officials did not constitute affirmative misconduct. Plaintiff was told that there was nothing officials at the prison level could do about his classification points because the issue was governed by state regulations. (Doc. 104-4, court record pg. 82, lns. 7-11 & 22-25, pg. 85, ln 25, pg. 86, lns. 1-3.) Those statements were true and accurate, and in no way constituted misrepresentations aimed at dissuading plaintiff from filing suit or hiding facts from plaintiff with respect to his legal remedies. Plaintiff's own deposition testimony and declaration reveal that plaintiff became aware he might have a cause of action when he was conducting legal research in 2000. (Doc. 104-4, court record pg. 85, lns. 5-13; Doc. 111, ¶13.) Plaintiff's own ignorance of his legal rights coupled with prison officials' accurate responses to his inquiries regarding his classification points do not an equitable estoppel defense make. Plaintiff's argument fails.

      c.  Equitable Tolling

Plaintiff next argues that equitable tolling, which can also "be used to stop a limitations period from continuing to run after it has already begun to run," Socop-Gonzalez, 272 F.3d at 1184 (internal quotations and citation omitted), applies. Equitable tolling "'soften[s] the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court.'" Daviton, 241 F.3d at 1137 (quoting Addison v. State of California, 21 Cal.3d 313, 316, 146 Cal.Rptr. 224, 578 P.2d 941 (1978)). Preventing the assertion of stale claims is the principal goal of statutes of limitation, and "'general policy . . . favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'" Daviton, 241 F.3d at 1137 (quoting Addision, 21 Cal.3d at 317). "[T]imely notice and absence of prejudice to defendant and plaintiff's good faith and reasonable conduct" are the requirements that control, id., and "tolling is appropriate where the record shows '(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim,'" id. at 1137-38 (quoting Collier v. City of Pasadena, 142 Cal.App.3d 917, 924, 191 Cal.Rptr. 681 (1983)).

///

Under California law, the equitable tolling doctrine tolls the statute of limitations while exhaustion occurs, regardless of whether or not exhaustion is prerequisite to filing suit. Donoghue v. County of Orange, 84 F.2d 926, 930-31 (9th Cir. 1988); Addison, 21 Cal.3d at 318. Assuming without deciding that the statute of limitations would be tolled while plaintiff exhausted his administrative remedies, there was no timely notice to defendant, as plaintiff did not initiate the administrative remedy process until September 6, 2000, *after* the statute of limitations had already expired. (Doc. 102, court record pg. 17.) The filing of an untimely administrative claim does not work to resurrect and restart the running of the statute of limitations. Equitable tolling does not apply in this instance and may not be used by plaintiff to avoid the bar to his claims.

### d. Continuing Wrong Doctrine

Finally, plaintiff argues that the continuing wrong doctrine tolled the statute of limitations because the discriminatory acts were ongoing. The doctrine involves "'repeated instances or continuing acts of the same nature, as for instance, repeated acts of sexual harassment or repeated discriminatory employment practices.'" Nesovic v. United States, 71 F.3d 776, 778 (1995) (quoting Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 592, 597 (9th Cir.), *cert. denied*, 498 U.S. 824, 111 S.Ct. 75 (1990)). "[T]he statute of limitations runs separately from *each* discrete act," RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1061 (9th Cir. 2002) (emphasis added), and "'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges,'" id. (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 133, 122 S.Ct. 2061 (2002)); see also Carpinteria Valley Farms, Ltd. v. County of Santa Barbara, 344 F.3d 822, 829 (9th Cir. 2003) (Morgan applies to section 1983 claims). "[M]ere continuing *impact* from past violations is not actionable." Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001) (internal quotations and citation omitted) (emphasis in original).

In this instance, the allegedly discriminatory act occurred in 1996 when plaintiff was classified pursuant to the regulations he now challenges in this action as discriminatory. The fact that the assessment of the additional four classification points in 1996 continues to impact plaintiff provides no basis for the application of the continuing wrong doctrine. This action involves no
///

continuing violations as the violation challenged is that of the application of the allegedly discriminatory regulations against plaintiff on May 29, 1996.

In conclusion, California's one-year statute of limitations applies to plaintiff's claims, and California's two-year tolling provision for the disability of imprisonment applies to plaintiff's damages claims. Plaintiff was assessed the classification points at issue in this action on May 29, 2006. As a result, plaintiff had until May 29, 1997, within which to file suit for injunctive relief, and until May 29, 1999, within which to file suit for damages. Plaintiff initiated the administrative remedy process on September 6, 2000, and filed suit on December 10, 2001. (Doc. 102, court record pg. 17; Doc. 1.) To the extent that equitable tolling applies during the pendency of administrative exhaustion, plaintiff's claims were already barred by the statute of limitations by the time he initiated the administrative remedy process and then filed suit.

E.  Conclusion

Based on the foregoing, the court finds that plaintiff's claims arising from the assessment of the classification points in 1996 for lack of requisite employment history and military service are barred by the statute of limitations, and defendant is entitled to judgment as a matter of law. Accordingly, the court HEREBY RECOMMENDS that plaintiff's motion for summary judgment, filed November 20, 2006, be DENIED, and defendant's motion for summary judgment, filed November 20, 2006, be GRANTED, thus concluding this action in its entirety. Based on this finding and recommendation, the court does not reach the parties' other arguments.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

///
///
///
///

specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **April 19, 2007**         /s/ **Dennis L. Beck**
                                  UNITED STATES MAGISTRATE JUDGE